# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Civil Case No. 1:20-cv-00241

| | |
|---|---|
| PENNY WORSLEY, ) | |
| ) | |
| Plaintiff, ) | **COMPLAINT** |
| ) | |
| vs. ) | **JURY TRIAL DEMANDED** |
| ) | |
| BAGWELL HOLT SMITH P.A., ) | |
| AMBERLYNN VALLEY ) | |
| HOMEOWNERS ASSOCIATION, ) | |
| INC., and COMMUNITY ) | |
| ASSOCIATION MANAGEMENT, ) | |
| LIMITED, ) | |
| ) | |
| Defendants. ) | |

## I.    INTRODUCTION

1.    This action is brought by Plaintiff Penny Worsley against Defendants

Bagwell Holt Smith P.A., Amberlynn Valley Homeowners Association, Inc., and

Community Association Management, Limited, for violations of the Fair Debt

Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the North Carolina Debt

Collection Act, N.C.Gen.Stat. § 75-50 *et seq.* ("NCDCA"), and, alternatively, the

North Carolina Collection Agency Act, N.C.Gen.Stat. § 58-70-90 *et seq.* ("NCCAA").

## II.    JURISDICTION

2.    Jurisdiction arises under 28 U.S.C. §§ 1331 and 1367, as well as 15 U.S.C.

§ 1692k(d). Venue is proper as all relevant events occurred here.

III. **PARTIES**

    A.   **Plaintiff Penny Worsley**

    3.   Plaintiff Penny Worsley is an individual that lives in Durham, North Carolina.

    4.   Ms. Worsley has a homeowners association account with Amberlynn Homeowners Association, Inc., ("the Account") which at times has been serviced by Community Association Management, Limited, and which was obtained by Bagwell Holt Smith P.A. to coerce payment through the filing of a Claim of Lien on Ms. Worsley's property.

    5.   The Account is a "debt" as defined by the FDCPA, 15 U.S.C. § 1692(a)(5).

    6.   The Account is a "debt" as defined by the NCDCA, N.C.Gen.Stat. § 75-50(2).

    7.   The Account is a "debt" as defined by the NCCAA, N.C.Gen.Stat. § 58-70-90(3).

    8.   Ms. Worsley is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692(a)(3).

2

9.     Ms. Worsley is a "consumer" as defined by the NCDCA, N.C.Gen.Stat. § 75-50(1).

10.     Ms. Worsley is a "consumer" as defined by the NCCAA, N.C.Gen.Stat. § 58-70-90(2).

**C.     Bagwell Holt Smith P.A.**

11.     Defendant Bagwell Holt Smith P.A. ("BHS") is a professional corporation registered under the laws of the State of North Carolina.

12.     BHS has "a full-service, comprehensive homeowners association and property management practice that serves North Carolina and South Carolina homeowner, condominium and townhome associations." BHS has "a broad knowledge of homeowner association issues, and can provide thoughtful guidance, effective enforcement and strong representation" to homeowners associations. BHS states that it assists homeowner, condominium and townhome associations with, among other things, "Collections and foreclosures on delinquent accounts," "Covenant enforcement," and "Litigating disputes in and out of court." *See* https://bhspa.com/practice-areas/community-association-law/

13.     With respect to homeowners associations, BHS states that it assists with issues regarding, among other things, collection of delinquent assessments. *See*

3

https://bhspa.com/practice-areas/community-association-law/homeowners-associations/

14.     BHS regularly attempted and attempts to collect consumer debts alleged to be due to another.

15.     BHS is engaged and engages in the collection of debts from North Carolina consumers using the mail and telephone.

16.     BHS obtained the Account after it entered default.

17.     BHS maintains a registered agent in Chapel Hill, North Carolina.

18.     BHS was and is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

**C.    Amberlynn Valley Homeowners Association, Inc.**

19.     Defendant Amberlynn Valley Homeowners Association, Inc. ("Amberlynn HOA") is a non-profit corporation organized under the laws of the State of North Carolina.

20.     Amberlynn HOA, itself, and through its agents, engaged and engages in the collection of debts from North Carolina consumers using the mail and telephone.

21.     Amberlynn HOA, itself, and through its agents, engaged and engages,

4

directly or indirectly, in debt collection from a consumer.

22.     Amberlynn Valley HOA was and is a "debt collector" as defined by the NCDCA, N.C.Gen.Stat. § 75-50(3).

**D.     Community Association Management, Limited**

23.     Community Association Management, Limited ("CAM") is homeowners association management company and a corporation organized under the laws of the State of Delaware, with its principal office located in Matthews, North Carolina.

24.     CAM regularly attempted and attempts to collect consumer debts alleged to be due to another.

25.     CAM engaged and engages in the collection of debts from North Carolina consumers using the mail and telephone.

26.     CAM engaged and engages, directly or indirectly, in debt collection from a consumer.

27.     CAM obtained the Account after it entered default.

28.     CAM maintains a registered agent in Matthews, North Carolina.

29.     CAM was and is a "debt collector" as defined by the NCDCA, N.C.Gen.Stat. § 75-50(3).

30.     Alternatively, CAM was and is a "collection agency" as defined by the NCCAA, N.C.Gen.Stat. §§ 58-70-15(a) and 58-70-90(1).

IV.     **FACTUAL ALLEGATIONS**

31.     At all times relevant hereto, Ms. Worsley was owner of record of certain real property located at 3131 Ivey Wood Lane, Durham, North Carolina (the "Property"). She has maintained the Property as her primary residence for over thirteen years.

32.     Ms. Worsley had an account with, and owed regular operating assessment payments to Amberlynn HOA, which payments were secured by the Property pursuant to the Declarations recorded with the Durham County Register of Deeds and Chapter 47F of the North Carolina General Statutes.

33.     For most of the life of the Account prior to filing her bankruptcy petition, Ms. Worsley maintained timely payments on the Account.

34.     On January 24, 2014, Ms. Worsley filed a Voluntary Petition under Chapter 13 of the United States Bankruptcy Code ("the Petition"). The Property was listed on Schedule A. Amberlynn HOA and the Account were listed on Schedule D. Ms. Worsley proposed to pay the monthly assessments to Amberlynn HOA, as well as to cure the arrearage as to the Account. *In re Worsley*, Case # 14-80074,

6

Bankr.M.D.N.C., Docket # 1 (unless otherwise noted, all references herein to "Docket # __" or "Proof of Claim # __" refer to the filings in Case # 14-80074, Bankr.M.D.N.C.).

35. On January 27, 2014, the Bankruptcy Court issued a Notice of Chapter 13 Bankruptcy case, Meeting of Creditors, & Deadlines. Docket # 8. The Notice stated that the Meeting of Creditors would occur on February 28, 2014, and that May 29, 2014, was the "Deadline to File a Proof of Claim" for all creditors. The Notice also stated in bold print, "It is recommended that secured claims are filed prior to the date of the creditor's meeting." Docket # 8. The Notice was served on Amberlynn HOA at two addresses. Docket # 13.

36. On March 7, 2014, the Chapter 13 Office of Trustee Richard M. Hutson II sent a letter to Amberlynn HOA reminding it that it must file a proof of claim in order for it to receive disbursements from Trustee Hutson's office pursuant to the then-proposed confirmation order.

37. On March 12, 2014, the Bankruptcy Court's Clerk of Court filed a Notice of Proposed Plan and Order Confirming Plan and Time for Filing Objection Thereto. Docket # 17. The Notice was served on Amberlynn HOA at two addresses. Docket # 18.

38.     On April 14, 2014, the Bankruptcy Court entered an Order Confirming Plan ("Confirmation Order"). The Confirmation Order contemplated monthly payments to Amberlynn HOA, beginning April 2014, as well as payments to satisfy the arrearage through March 2014 in an amount "to be determined." Indeed, the Confirmation Order included the following regarding Amberlynn HOA's secured claim:

D.     Secured Claims

1.     Long-term Debts – To be paid by Trustee.

| Creditor & Property | Claim Filed (Y/N) | Monthly Payment | Monthly Payment to Begin | Arrears Through | Arrears Amount | Monthly Payment on Arrears |
|---|---|---|---|---|---|---|
| *** | | | | | | |
| Amberlynn HOA HOA dues | N | $75 | 4/2014 | 3/2014 | Unknown | To be determined |

Docket # 19.

39.     The Bankruptcy Court's Standing Order incorporated into the Confirmation Order at paragraph III-G stated:

B.     THE FOLLOWING PROVISIONS ARE APPLICABLE TO THE HOLDER OR SERVICER ("HOLDER") OF A CLAIM SECURED BY A DEED OF TRUST, MORTGAGE OR SECURITY INTEREST IN REAL PROPERTY OR A MOBILE HOME:

8

1.    The creditor, upon confirmation, is precluded from imposing late charges or other default related fees based solely on pre-confirmation default.

2.    If the trustee is disbursing ongoing monthly installment payments (hereinafter "ongoing payments"), the creditor must apply each ongoing payment to the month in which the payment is designated.

***

6.    Nothing herein shall modify the creditor's responsibilities under Bankruptcy Rule 3002.1.

7.    Unless the court orders otherwise, an order granting a discharge in the case shall be a determination that all prepetition and postpetition defaults have been cured and the account is current and reinstated on the original payment schedule under the note and security statement as if no default had ever occurred.

8.    **PENALTY FOR FAILURE OF CREDITOR TO COMPLY WITH THE REQUIREMENTS OUTLINED UNDER FRBP 3002.1 AND THIS STANDING ORDER**. Any willful failure of the creditor to credit payments in the manner required by FRBP 3002.1 and this Standing Order or any act by the creditor following the entry of discharge to charge or collect any amount incurred or assessed prior to the filing of the Chapter 13 Petition or during the pendency of the Chapter 13 case that was not authorized by the order confirming plan or approved by the court

9

after proper notice shall be a violation of 11 U.S.C. §524(i) and the injunction under 11 U.S.C. §524(a)(2).

Docket #19; Standing Order entered February 24, 2012, ¶ B-2 (found at http://www.ncmb.uscourts.gov/sites/default/files/general-ordes/ Standing%20Order%20-%20CH%2013%20Confirmation%202012_0.pdf) (emphasis in original).

40.    On April 18, 2014, Amberlynn HOA filed Proof of Claim # 11, asserting a security interest against the Property. Proof of Claim # 11.

41.    Proof of Claim # 11 stated that the last four digits of the number by which Amberlynn HOA identified Ms. Worsley was 3131. Proof of Claim # 11.

42.    Proof of Claim # 11 stated that the amount of the secured claim as of the date that the Petition was filed was $898.38. Proof of Claim # 11.

43.    Proof of Claim # 11 Part 2 attached a Statement showing that the Amberlynn HOA monthly assessment as of the date the petition was filed was $75.00. Proof of Claim # 11 Part 2.

44.    Amberlynn HOA's Proof of Claim # 11 was a claim that was secured by a security interest in Ms. Worsley's principal residence, and for which the plan provided that the trustee would make contractual installment payments.

10

45.     On August 21, 2014, Trustee Hutson filed his Report of Filed Claims. The Report showed that Amberlynn Valley HOA had an ongoing secured claim of $75.00 per month, as well as an arrearage claim of $1,048.38. Docket # 20. This arrearage amount is consistent with Proof of Claim # 11 stating $898.38, plus the additional February 2014 and March 2014 assessments (2 months @ $75.00 each) ($898.38 + $150.00 = $1,048.38).

46.     On August 11, 2016, Amberlynn Valley HOA filed a "Notice of Case Specific Address Pursuant to 11 U.S.C. § 342(e) and Local Rules 2002-1 and 3003-1." This document was filed on a form evidently provided by the U.S. Bankruptcy Court for the Western District of North Carolina. Docket # 29.

47.     Trustee Hutson's office changed the payment address and sent all subsequent payments to the new address listed on the "Notice of Case Specific Address Pursuant to 11 U.S.C. §342(e) and Local Rules 2002-1 and 3003-1."

48.     Plaintiff made all payments required under the Confirmation Order.

49.     Federal Rule of Bankruptcy Procedure 3002.1(a) states:

> (a) In General. This rule applies in a chapter 13 case to claims (1) that are secured by a security interest in the debtor's principal residence, and (2) for which the plan provides that either the trustee or the debtor will make contractual installment payments. Unless the court orders

otherwise, the notice requirements of this rule cease to apply when an order terminating or annulling the automatic stay becomes effective with respect to the residence that secures the claim.

50.   Federal Rule of Bankruptcy Procedure 3002.1(b) states:

(b) NOTICE OF PAYMENT CHANGES; OBJECTION. The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due.

(1) Notice. The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any change that results in the payment amount, including any change that results from an interest-rate or escrow-account adjustment, not later than 21 days before a payment in the new amount is due. If the claim arises from a home-equity line of credit, this requirement may be modified by court order.

(2) Objection. A party in interest who objects to the payment change may file a motion to determine whether the change is required to maintain payments in accordance with § 1322(b)(5) of the Code. If no motion is filed by the day before the new amount is due, the change goes into effect, unless the court orders otherwise.

51.   Federal Rule of Bankruptcy Procedure 3002.1(c) states:

(c) Notice of Fees, Expenses, and Charges. The holder of the claim shall file and serve on the debtor, debtor's

12

counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.

52.    Federal Rule of Bankruptcy Procedure 3002.1(e) states:

(e) DETERMINATION OF FEES, EXPENSES, OR CHARGES. On motion of a party in interest filed within one year after service of a notice under subdivision (c) of this rule, the court shall, after notice and hearing, determine whether payment of any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code.

53.    Federal Rule of Bankruptcy Procedure 3002.1(f) and (g) states:

(f) Notice of Final Cure Payment. Within 30 days after the debtor completes all payments under the plan, the trustee shall file and serve on the holder of the claim, the debtor, and debtor's counsel a notice stating that the debtor has paid in full the amount required to cure any default on the claim. The notice shall also inform the holder of its obligation to file and serve a response under subdivision (g). If the debtor contends that final cure payment has been made and all plan payments have been completed, and the trustee does not timely file and serve the notice required by this subdivision, the debtor may file and serve the notice.

13

(g) Response to Notice of Final Cure Payment. Within 21 days after service of the notice under subdivision (f) of this rule, the holder shall file and serve on the debtor, debtor's counsel, and the trustee a statement indicating (1) whether it agrees that the debtor has paid in full the amount required to cure the default on the claim, and (2) whether the debtor is otherwise current on all payments consistent with § 1322(b)(5) of the Code. The statement shall itemize the required cure or postpetition amounts, if any, that the holder contends remain unpaid as of the date of the statement. The statement shall be filed as a supplement to the holder's proof of claim and is not subject to Rule 3001(f).

54. During Ms. Worsley's bankruptcy and while receiving payments from Trustee Hutson consistent with the Confirmation Order, Amberlynn HOA assessed an increase in monthly payment amount to the Account.

55. During Ms. Worsley's bankruptcy and while receiving payments from Trustee Hutson consistent with the Confirmation Order, CAM assessed an increase in monthly payment amount to the Account.

56. During Ms. Worsley's bankruptcy and while receiving payments from Trustee Hutson consistent with the Confirmation Order, Amberlynn HOA did not file any notices of payment change, as required by Fed.R.Bankr.P. 3002.1(b).

14

57.     During Ms. Worsley's bankruptcy and while receiving payments from Trustee Hutson consistent with the Confirmation Order, CAM did not file any notices of payment change, as required by Fed.R.Bankr.P. 3002.1(b).

58.     Because Amberlynn HOA and CAM did not file a Notice pursuant to Fed.R.Bank.P. 3002.1(b), Ms. Worsley did not have the opportunity to file a motion, pursuant to Fed.R.Bankr.P. 3002.1(b)(2), requesting the Bankruptcy Court to determine whether the change was required to maintain payments.

59.     During Ms. Worsley's bankruptcy and while receiving payments from Trustee Hutson consistent with the Confirmation Order, Amberlynn HOA assessed late/delinquent fees and interest to the Account.

60.     During Ms. Worsley's bankruptcy and while receiving payments from Trustee Hutson consistent with the Confirmation Order, CAM assessed late/delinquent fees and interest to the Account.

61.     During Ms. Worsley's bankruptcy and while receiving payments from Trustee Hutson consistent with the Confirmation Order, Amberlynn HOA did not file any notices of postpetition fees and expenses, as required by Fed.R.Bankr.P. 3002.1(c).

15

62.     During Ms. Worsley's bankruptcy and while receiving payments from Trustee Hutson consistent with the Confirmation Order, CAM did not file any notices of postpetition fees and expenses, as required by Fed.R.Bankr.P. 3002.1(c).

63.     Because Amberlynn HOA and CAM did not file a Notice pursuant to Fed.R.Bank.P. 3002.1(c), Ms. Worsley did not have the opportunity to file a motion, pursuant to Fed.R.Bankr.P. 3002.1(e), requesting the Bankruptcy Court to determine whether payment of any claimed fee, expense, or charge was required to cure a default or maintain payments.

64.     On June 26, 2019, Trustee Hutson filed a Notice of Final Cure Payment, indicating that the arrearage claim included in Proof of Claim # 11 was allowed in the amount of $1,048.38 and that the amount paid by Trustee Hutson on that arrearage claim was $1,048.38. Docket # 35. This arrearage amount is consistent with Proof of Claim # 11 stating $898.38, plus the additional February 2014 and March 2014 assessments (2 months @ $75.00 each) ($898.38 + $150.00 = $1,048.38).

65.     The Notice of Final Cure also stated:

> Within 21 days of the service of the Notice of Final Cure Payment, the creditor MUST file and serve a Statement as a supplement to the holder's proof of claim on the Debtor, Debtor's Counsel and the Chapter 13 Trustee, pursuant to Fed.R.Bank.P.3002.1(g), indicating 1) whether it agrees

Case 1:20-cv-00241-LCB-JLW   Document 1   Filed 03/13/20   Page 16 of 50

that the Debtor has paid in full the amount required to cure the default on the claim; and 2) whether the Debtor is otherwise current on all payments consistent with 11 U.S.C. § 1322(b)(5).

The statement shall itemize the required cure or post-petition amounts, if any, that the holder contends remain unpaid as of the date of the statement. The statement shall be filed as a supplement to the holder's proof of claim and is not subject to Rule 3001(f). Failure to notify may result in sanctions.

Docket # 35.

66.     The Notice of Final Cure was served on Amberlynn HOA. Docket # 35.

67.     The HOA did not file a response to the Notice of Final Cure Payment, as required by Fed.R.Bankr.P. 3002.1(g).

68.     Dated July 2, 2019, CAM, on behalf of Amberlynn HOA, sent Ms. Worsley a letter that referred to the Account and stated:

Dear Penny Worsley,

Have you forgotten us? This is just a friendly reminder that your account with Amberlynn Valley Homeowners Association, Inc. is past due. Our records indicate you have an overdue amount of $1944.11.

Considering your excellent payment history, we're certain this is just an oversight. I'm sure we will receive your check within the next few days.

17

*\*\*\**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

69. Dated August 1, 2019, CAM, on behalf of Amberlynn HOA, sent Ms.

Worsley a letter that referred to the Account and stated:

Dear : Penny Worsley,

Although we have contacted you about the oustanding balance on your account, we still have not heard from you. You have an outstanding balance of $2007.90, which contains additional late charges or fees.

If you have already sent payment in full, we ask that you call and let us know. Otherwise, please call us to discuss what you plan to do to settle your account.

*\*\*\**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

70. Dated August 6, 2019, Trustee Hutson's office sent Ms. Worsley a letter

that referred to the Account and stated:

Dear Ms. Worsley:

18

We are presently auditing your file for closing. Your mortgage[sic] payments were being paid through the plan as a continuing debt. You should begin making payments directly to the below-entitled mortgage holder at the indicated address beginning September 1, 2019, in the amount of $75.00. Your payments should be made payable to:

Amberlynn Valley HOA
P O Box 79032
Charlotte, NC 28271-0030

By copy of this letter, we are notifying the mortgage holder that your case is closing and you will begin making monthly payments directly as indicated above. If you have any questions or need any further information concerning this matter, please contact the mortgage[sic] holder.

71.     Consistent with the letter from Trustee Hutson's office, Ms. Worsley

began direct payments to Amberlynn HOA in the amount of $75.00 per month.

72.     On August 9, 2019, CAM received a copy of Trustee Huston's August

6, 2019, letter.

73.     Amberlynn HOA did not contact Trustee Hutson's office to dispute,

question, or otherwise regarding, the instruction to Ms. Worsley to resume

payments of $75.00 per month to Amberlynn HOA at the address in the letter.

19

74.    CAM did not contact Trustee Trustee Hutson's office to dispute, question, or otherwise regarding, the instruction to Ms. Worsley to resume payments of $75.00 per month to Amberlynn HOA at the address in the letter.

75.    Dated September 2, 2019, CAM, on behalf of Amberlynn HOA, sent Ms. Worsley a letter that referred to the Account and stated:

> Dear Penny Worsley,
>
> According to our records, your account is now (90) days or more past due for payment of Assessments owed to Amberlynn Valley Homeowners Association, Inc..[sic] The total amount due as of September 2, 2019 is $2072.65. This amount includes all Assessments, fines and fees currently due on this account.
>
> ***
>
> **If you do not make immediate payment or contact our office within 30 days to setup a payment plan, the Association may pursue alternative collection methods, including legal action\* in order to recover the delinquent balance.**
>
> *\*Legal action to collect the delinquent balance may include filing a Claim of Lien upon your property to secure the amount owed, and if the debt remains unpaid, Foreclose on the Claim of Lien. If the Association incurs attorney fees to collect this debt, you will be charged the attorney fees and costs of collection.*
>
> ***

We may report information about your account to credit
bureaus. Late payments, missed payments, or other
defaults on your account may be reflected in your credit
report.

(emphasis in original).

76.    Dated September 24, 2019, CAM, on behalf of Amberlynn HOA, sent

Ms. Worsley a letter that referred to the Account and stated:

Dear Penny Worsley,

Your recent payment to Amberlynn Valley Homeowners
Association, Inc. was sent to the incorrect address which
may create a delay in processing your payment. You do
not need to stop payment or send a replacement payment
at this time. The payment we received will be processed.
However, the delay could result in late fees to your
account.

***

**All payments must be mailed to the following address:**
**Amberlynn Valley Homeowners Association, Inc.**
**Payment Processing Center**
**P.O. Box 848**
**Commerce, GA 30529**

(emphasis in original).

77.     In its September 24, 2019, letter, CAM, on behalf of Amberlynn HOA, threatened to impose a late fee for Ms. Worsley's payment sent to the payment address provided by Trustee Hutson's office.

78.     According to the Account History, six days later on September 30, 2019, CAM, on behalf of Amberlynn HOA, did in fact impose a $20.00 "Delinquent Fee" to the Account related to the payment sent to the payment address provided by Trustee Hutson's office.

79.     The payment address provided by Trustee Hutson's office (P.O. Box 79032 / Charlotte NC 28271-0030) was based on the last payment address in the Bankruptcy Court's record, based on the "Notice of Case Specific Address Pursuant to 11 U.S.C. § 342(e) and Local Rules 2002-1 and 3003-1" filed by Amberlynn HOA on August 11, 2016. The Notice provided that the new address was "for both payment and notice purposes." Docket # 29.

80.     Amberlynn HOA did not file a subsequent Notice of any change in its address for payments or notices. Indeed, Trustee Hutson sent payments to the Charlotte address through the conclusion of the case.

81.     Dated October 4, 2019, CAM, on behalf of Amberlynn HOA, sent Ms. Worsley a letter that referred to the Account and stated:

IT HAS BEEN BROUGHT TO THE ATTENTION OF THE BOARD OF DIRECTORS THAT YOUR ASSOCIATION ACCOUNT IS IN ARREARS.

PLEASE TAKE NOTICE That regular and special assessments duly levied by Amberlynn Valley Homeowners Association, Inc. against your property located at 3131 Ivey Wood Lane, are delinquent. A delinquent balance of $2138.37 is due on your account.

\*\*\*

BE ADVISED THAT PURSUANT TO NORTH CAROLINA LAW YOU HAVE THE RIGHT TO PAY THIS BALANCE IN FULL WITHIN FIFTEEN (15) DAYS OF THE DATE OF THIS LETTER WITHOUT INCURRING ATTORNEY'S FEES AND COSTS ASSOCIATED WITH COLLECTION OF THIS DEBT. If the balance due is not paid in full within 15 days of the date of this letter, the Association will turn your account over to the Association's law firm, and the Association intends to seek payment from you of all attorney's fees, costs and expenses incurred in collection of this debt. Amberlynn Valley Homeowners Association, Inc. Reserves the right to report this delinquency to the credit bureau's. The balance due does not include any other monies due the association including, but not limited to, current or future assessments, late charges, or interest, which will increase the balance due, stated above.

\*\*\*

You will receive NO further notices before the institution of formal action to collect the outstanding balance, including attorney's fees. Your account will be turned

23

over to the Associations [sic] attorney if payment is not received within 15 days. From that point in time forward, all communications will be between you and the Associations [sic] attorney, **not** Community Association Management or the Board of Directors. We hope this will not be necessary.

\*\*\*

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

(emphasis in original).

82.     On October 10, 2019, Ms. Worsley called CAM. CAM's record of that telephone call states: "[Homeowner] called because she just left bankruptcy. We have no record of this."

83.     Enclosed with the October 4, 2019, letter was an Account History, reflecting all charges, assessments, and payments from October 5, 2016, through October 1, 2019. This Account History shows that CAM, on behalf of Amberlynn HOA, misapplied payments to the Account from Trustee Hutson, failed to credit payments to the Account from Trustee Hutson, assessed interest to the Account, assessed late/delinquent fees to the Account, and increased the Account's monthly payment allegedly due during the Chapter 13 confirmed plan.

24

84. One example is that on June 30, 2017, Trustee Hutson sent Amberlynn HOA a check in the amount of $75.00 (the monthly assessment amount in the Confirmation Order), which should have been applied to the next month's assessment. However, the Account History shows that, on July 5, 2017, Amberlynn HOA and/or CAM divided the $75.00 and applied it to the Account separately in three parts -- $34.07, $20.00, and $20.93.

85. Another example is that on July 31, 2017, Trustee Hutson sent Amberlynn HOA a check in the amount of $75.00, which should have been applied to the next month's assessment. However, the Account History shows that, on August 3, 2017, Amberlynn HOA and/or CAM divided the $75.00 and applied it to the Account separately in three parts – $33.29, $20.00, and $21.71.

86. Another example is that on August 31, 2017, Trustee Hutson sent Amberlynn HOA a check in the amount of $75.00, which should have been applied to the next month's assessment. However, the Account History shows that, on September 6, 2017, Amberlynn HOA and/or CAM divided the $75.00 and applied it to the Account separately in three parts – $32.55, $20.00, and $22.45.

87. Despite the fact that Trustee Hutson had been sending payments to Amberlynn HOA pursuant to the Confirmation Order, Amberlynn HOA and/or

CAM assessed to the Account a "Delinquent Fee" of $20.00 during every month reflected in the Account History.

88.     According to The Board of Directors of Amberlynn Valley Homeowners Association Inc. Resolution Adopting a Collection Policy ("Amberlynn HOA Collection Policy"), the Amberlynn HOA applies and credits payments in the following order:

> 1. Charges for legal fees, court costs, and other costs of collection
> 2. All late charges and interest accrued, as applicable
> 3. All other charges incurred by the Association as a result of any violation by an owner, his/her family, employees, agents or licensees, of the Declaration, Articles of Incorporation, By-Laws, Rules and Regulations, or Resolutions.
> 4. The assessment for a unit, including any accelerated or special assessment due, as applicable; payments shall be applied toward the oldest month(s) then owed.

Proof of Claim # 11 Part 2, pp. 5-7.

89.     Upon information and belief, Amberlynn HOA and COA applied and credited ongoing monthly payments received from Trustee Hutson – payments made consistent with the Confirmation Order – according to the Amberlynn HOA Collection Policy instead of according to the Confirmation Order, Bankruptcy Code, and Federal Rules of Bankruptcy Procedure.

26

90.    Upon information and belief, Amberlynn HOA and COA applied and credited portions of ongoing monthly payments received from Trustee Hutson – payments made consistent with the Confirmation Order – to months other than the months designed by the Confirmation Order and Trustee.

91.    Upon information and belief, Amberlynn HOA and COA applied and credited portions of ongoing monthly payments received from Trustee Hutson – payments made consistent with the Confirmation Order – to interest that was both wrongly assessed to the Account and never disclosed to the Trustee, Ms. Worsley, or Ms. Worsley's attorney through a notice filed pursuant to Fed.R.Bankr.P. 3002.1(c).

92.    Upon information and belief, Amberlynn HOA and COA applied and credited portions of ongoing monthly payments received from Trustee Hutson – payments made consistent with the Confirmation Order – to late/delinquent fees that were both wrongly assessed to the Account and never disclosed to the Trustee, Ms. Worsley, or Ms. Worsley's attorney through a notice filed pursuant to Fed.R.Bankr.P. 3002.1(c).

93.    Upon information and belief, each time that Amberlynn HOA and/or CAM divided an ongoing monthly payment from Trustee Hutson and applied it to

27

the Account separately such that one of the parts was exactly $20.00, Amberlynn HOA and/or CAM applied part of the payment from Trustee Hutson to a late/delinquent fee – a fee both wrongly assessed to the Account and never disclosed to the Trustee, Ms. Worsley, or Ms. Worsley's attorney through a notice filed pursuant to Fed.R.Bank.P. 3002.1(c).

94.     Upon information and belief, Amberlynn HOA and COA applied and credited arrearage payments received from Trustee Hutson – payments made consistent with the Confirmation Order – according to the Amberlynn HOA Collection Policy instead of according to the Confirmation Order, Bankruptcy Code, and Federal Rules of Bankruptcy Procedure.

95.     Upon information and belief, Amberlynn HOA and COA applied and credited portions of arrearage payments received from Trustee Hutson – payments made consistent with the Confirmation Order – to months other than the months designed by the Confirmation Order and Trustee.

96.     Upon information and belief, Amberlynn HOA and COA applied and credited portions of arrearage payments received from Trustee Hutson – payments made consistent with the Confirmation Order – to interest that was both wrongly

28

assessed to the Account and never disclosed to the Trustee, Ms. Worsley, or Ms. Worsley's attorney through a notice filed pursuant to Fed.R.Bankr.P. 3002.1(c).

97.     Upon information and belief, Amberlynn HOA and COA applied and credited portions of arrearage payments received from Trustee Hutson – payments made consistent with the Confirmation Order – to late/delinquent fees that were both wrongly assessed to the Account and never disclosed to the Trustee, Ms. Worsley, or Ms. Worsley's attorney through a notice filed pursuant to Fed.R.Bankr.P. 3002.1(c).

98.     The Account History shows that Amberlynn HOA and/or CAM assessed to the Account "Delinquent Interest" for 2016 for each month between and including October 2016[1] and August 2018. Upon information and belief, Amberlynn HOA and/or CAM treated the Account has past due for the monthly assessments due during 2016 every month until Trustee Hutson's payment was received in August 2018. This improper treatment of the Account demonstrates that Amberlynn HOA and/or CAM misapplied and failed to credit payments received from Trustee Hutson.

---

[1] "Delinquent Interest" for 2016 may have been assessed to the Account in months prior to October 2016; however, the Account History does not include information for months prior to October 2016.

Case 1:20-cv-00241-LCB-JLW   Document 1   Filed 03/13/20   Page 29 of 50

99.     The Account History shows that Amberlynn HOA and/or CAM assessed to the Account "Delinquent Interest" for 2017 for each month between and including January 2017 and October 2019.[2] Upon information and belief, Amberlynn HOA and/or CAM treated the Account has past due for the monthly assessments due during 2017 every month subsequent to January 2017. This improper treatment of the Account demonstrates that Amberlynn HOA and/or CAM misapplied and failed to credit payments received from Trustee Hutson.

100.    Amberlynn HOA's and/or CAM's misapplication of ongoing monthly payments occurred dozens of times during Ms. Worsley's bankruptcy.

101.    Amberlynn HOA's and/or CAM's failure to credit ongoing monthly payments occurred dozens of times during Ms. Worsley's bankruptcy.

102.    Amberlynn HOA's and/or CAM's wrongful application of ongoing monthly payments to late/delinquent fees and/or interest occurred dozens of times during the bankruptcy.

103.    Amberlynn HOA's and/or CAM's misapplication of arrearage payments occurred dozens of times during Ms. Worsley's bankruptcy.

---

[2]"Delinquent Interest" for 2017 may have been assessed to the Account in months subsequent to October 2019; however, the Account History does not include information for months subsequent to October 2019.

104.    Amberlynn HOA's and/or CAM's failure to credit arrearage payments occurred dozens of times during Ms. Worsley's bankruptcy.

105.    Amberlynn HOA's and/or CAM's wrongful application of arrearage payments to late/delinquent fees and/or interest occurred dozens of times during the bankruptcy.

106.    Amberlynn HOA and CAM failed to apply payments as required by the Confirmation Order, wrongly assessed delinquent fees and interest to the Account without filing a notice pursuant to Fed.R.Bank.P. 3002.1(c), and increased the monthly payment without filing a notice filed pursuant to Fed.R.Bank.P. 3002.1(b). These actions taken by Amberlynn HOA and CAM were not permitted by law and caused a snowballing effect of misinformation between the two entities and later to BHS, resulting in a filed Claim of Lien encumbering the Property and thousands of dollars wrongly claimed to be due from Ms. Worsley.

107.    Dated October 29, 2019, BHS sent Ms. Worsley a letter that stated:

Re:    Claim of Lien - 3131 Ivey Wood Lane
       Amberlynn Valley Homeowners Association, Inc.

To Whom It May Concern:

Please find enclosed a copy of a claim of lien filed against you by Amberlynn Valley Homeowners

Association, Inc. This claim of lien will remain on file against your property in the Durham County Clerk of Court and become part of the public record until the full balance is paid. In addition to the past due assessments, you are also responsible for paying attorney's fees and related costs. As of the date of this letter, the itemization of your balance is:

| | |
|---|---|
| **Assessments:** | **$ 2,063.37** |
| **Late fees:** | **$ 0.00** |
| **Late interest:** | **$ 0.00** |
| **Legal fees:** | **$ 175.00** |
| **Filing fees:** | **$ 6.00** |
| **Postage:** | **$ 7.20** |
| **TOTAL:** | **$ 2,251.57** |

If you wish to discuss setting up a payment schedule, please contact this firm at **hoa@bhspa.com**. Please note that all communications regarding payment arrangements must be **in writing** via e-mail or regular mail. Due to ethical and legal considerations, **phone calls will not be accepted**.

Please note that you are liable for attorney's fees, interest and court costs in addition to the outstanding balance owed, and that these sums will increase if you fail to pay. Payments must be made in the form of **certified payments** (including certified checks or money orders) or cash. All certified checks or money orders must be made payable to **Amberlynn Valley Homeowners Association, Inc.** but mailed to this law firm at the above address. **Please note that failure to respond may result in the initiation of foreclosure proceedings**.

32

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ALL
INFORMATION WILL BE USED FOR THAT
PURPOSE.**

> Sincerely,
> [signature]
> Melissa A. Tulis
> Attorney at Law

(emphasis in original).

108.   By sending the October 29, 2019, letter to Ms. Worsley, BHS attempted to collect a debt.

109.   BHS attempted to collect attorney fees and costs that were not reasonably incurred.

110.   BHS attempted to collect attorney fees and costs that were incurred for the purpose of filing a factually and legally deficient Claim of Lien.

111.   Enclosed with the October 29, 2019, letter from BHS was a Claim of Lien By Homeowners Association, which stated:

> **THIS DOCUMENT CONSTITUTES A LIEN AGAINST
> YOUR PROPERTY, AND IF THE LIEN IS NOT PAID,
> THE HOMEOWNERS ASSOCIATION MAY PROCEED
> WITH FORECLOSURE AGAINST YOUR PROPERTY
> IN LIKE MANNER AS A MORTGAGE UNDER
> NORTH CAROLINA LAW PURSUANT TO N.C.G.S.
> §47F-3-116.**

\*\*\*

Amberlynn Valley Homeowners Association, Inc. A North Carolina non-profit corporation, hereby claims a lien against the Property owned by the below-named Owner pursuant to the Declaration of Covenant, Conditions and Restrictions, Easements, Charges and Liens for the Amberlynn Valley Homeowners Association, Inc. which is recorded at Book 4194, Page 538, Durham County Registry (as amended, the "Declaration"), and applicable law. In support of this the claimant shows as follows:

1.      The name and place of business of the party that claims, gives notice of and files this lien is Amberlynn Valley Homeowners Association, Inc. ("the Association"), whose undersigned attorney's office is located at 111 Cloister Court, Suite 200, Chapel Hill, North Carolina 27514.

2.      **Penny Worsley** is the record owner of the Property (the "Owner").

\*\*\*

4.      The assessments due and payable from the owner were not paid during various months of the current year and the outstanding balance due on the assessment account is in the amount of **$2,251.57**, plus subsequently accrued assessments, late fees, attorneys' fees and related costs.

5.      The Association is entitled to record this lien against the Property pursuant to the Declaration and applicable law.

34

6. Amberlynn Valley Homeowners Association, Inc. hereby appoints Michael R. Ganley as trustee for the purpose of conducting any foreclosure of this Claim of Lien.

\*\*\*

**BAGWELL HOLT SMITH P.A.**
*Attorneys for Lien Claimant*

By:    [signature]_____
          Melissa A. Tulis/State Bar No. 51037

112.    "The very point of a lien is that it coerces the property holder to settle a debt in order to maintain rights in the property. See 'Lien,' Black's law Dictionary (9th ed. 2009) (A lien is '[a] legal right of interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied.')." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014).

113.    BHS, on behalf of Amberlynn HOA, filed the Claim of Lien prior to the entry of an Order of Discharge by the Bankruptcy Court.

114.    BHS, on behalf of Amberlynn HOA, filed the Claim of Lien despite not having sought relief from the automatic stay.

115.    BHS filed the Claim of Lien for the purpose of coercing Ms. Worsley to settle a debt in order to maintain rights in the Property.

35

116.    By sending the October 29, 2019, letter to Ms. Worsley, BHS attempted to collect a debt.

117.    By filing the Claim of Lien By Homeowners Association, BHS communicated false information to the Clerk of Court and put onto the public record false information regarding Ms. Worsley, the Account, and the Property.

118.    On November 22, 2019, this Court entered an Order of Discharge pursuant to 11 U.S.C. § 1328. Docket # 45.

119.    The Order of Discharge was served on Amberlynn HOA at three addresses. Docket # 47.

120.    On December 4, 2019, Trustee Hutson filed his Final Report and Account, which stated, among other things, that 1) $4,964.15 was paid on the secured claim; and 3) $1,048.38 was paid as to the arrearage claim. Docket # 48. The Notice of the Filing of Trustee Hutson's Final Report was served on the HOA at two addresses. Docket # 49.

121.    Amberlynn HOA did not file a written objection to the Trustee's Final Report.

122.    Amberlynn HOA did not file any document disputing the accuracy of the Trustee's Final Report.

36

123.    Dated January 17, 2020, Amberlynn HOA sent a letter to Ms. Worsley

that referenced the Account and stated:

> Pursuant to N.C.G.S. § 45-21-16(c)(5a), we are providing you with the following information regarding amounts owed by you to the Association as of the date of this letter:
>
> **Delinquent Balance Due: $2530.76**
>
> The above balance includes the Attorney Fee for Lien filing and the Lien Filing Fee. The balance DOES NOT include an 8% Interest Charge from the date of your lien or the Attorney's foreclosure filing fee.
>
> \*\*\*
>
> At this time, your account is being referred back to our attorney to proceed with foreclosure of the lien.
>
> \*\*\*
>
> Foreclosure will be filed within 15 days unless the balance is paid in full.
>
> \*\*\*
>
> We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

124. On January 29, 2020, Ms. Worsley's attorney's office sent an email to BHS stating that the monthly assessments were paid through the Chapter 13 plan and provided the most recent foreclosure document that Ms. Worsley had received.

125. On January 29, 2020, a non-attorney representative of BHS responded via email, stating, among other things, that she could set up Ms. Worsley with a payment plan through BHS to pay off the balance owed.

126. Ms. Worsley's office continued via email to attempt to resolve the problems caused by Amberlynn HOA, CAM, and BHS.

127. Eventually, still on January 29, 2020, Melissa Tulis, an attorney with BHS, emailed Ms. Worsley's attorney's office stating the following:

> I'm the attorney for the HOA. I'm trying to wrap my head around the numbers here- it appears the reason an outstanding balance was incurred is because the dues increased from 2014 to 2019 (from $75 to $90 in 2019). Is it your position that the discrepancy in post-petition dues is not owed because they increased from the amount in the original proof of claim?

128. On January 30, 2020, Ms. Worsley's attorney sent an email to Ms. Tulis, explaining the requirements of Federal Rules of Bankruptcy Procedure 3002.1(b), (c), and (g), and detailing how Amberlynn HOA failed to comply with them. Ms. Worsley's attorney requested Ms. Tulis to confirm that BHS and Amberlynn HOA

38

would cease all attempts to collect the amounts claimed and all attempts to foreclosure as to Ms. Worsley's property.

129.    On January 31, 2020, Ms. Tulis responded via email, stating:

> Thank you for your email. Our office will put all collection efforts on hold until I can determine what notices have or have not been sent by my client. The property manager for this HOA sends out its own notices periodically even when accounts have been sent to our office (which I believe is the 15-day foreclosure letter you're referring to) but I have asked them to put a hold on all collection efforts as well until we sort this out.

130.    Ms. Tulis's January 31, 2020, email makes clear that BHS did not know whether or not Amberlynn HOA or CAM had complied with the applicable bankruptcy rules.

131.     Ms. Tulis's January 31, 2020, email makes clear that BHS did not know whether or not the balance claimed by Amberlynn HOA and CAM was accurate,

132.    Ms. Tulis's January 31, 2020, email makes clear that BHS did not know whether or not the Claim of Lien it had filed was factually and legally sound.

133.    Ms. Tulis's January 31, 2020, email makes clear that, prior to filing the claim of lien, BHS did not conduct any investigation into the factual or legal basis of the claim of lien.

134.    On February 7, 2020, Michael Ganley, an attorney with BHS, sent an

email stating:

> Following up on this, as our office (and the current
> property manager) was not involved with the 2014 proof
> of claim, we have now been able to review the matter and
> we moved forward with cancelling the claim of lien and
> wiping out any balance pre-November 2019. The only
> amounts on the owner's ledger are December 2019
> forward. Let me know if you have any questions or need
> anything further. Thank you.

135.    Ms. Worsley filed a motion to reopen her bankruptcy case to allow her

to address the many violations of the bankruptcy code.

136.    On February 13, 2020, the Bankruptcy Court held a hearing on Ms.

Worsley's motion to reopen her bankruptcy case and later entered an order

reopening her bankruptcy case.

137.    At the February 13, 2020, hearing, attorney J.P. Cournoyer appeared on

behalf of Amberlynn HOA. During the hearing, Mr. Cournoyer stated:

> The HOA acknowledges that a stay violation occurred.
> We don't dispute that they had notice of the bankruptcy
> case and that a stay violation occurred. What I understand
> to be the case is that the HOA switched property
> managers mid-process, inadequate communication
> happened, and that is the explanation for how this stay
> violation occurred.

138.   Amberlynn HOA's mishandling of the Account and the false claims it made to Plaintiff derive, in part, from its willful failure to credit correctly the ongoing monthly payments received from the Chapter 13 Trustee.

139.   Amberlynn HOA's mishandling of the Account and the false claims it made to Plaintiff derive, in part, from its willful failure to apply each ongoing monthly payment to the month in which the payment was designated, as required by the Standing Order incorporated into the Confirmation Order. *See*, *supra*, ¶ 39.

140.   CAM's mishandling of the Account and the false claims it made to Plaintiff derive, in part, from its willful failure to credit correctly the ongoing monthly payment received from the Chapter 13 Trustee.

141.   CAM's mishandling of the Account and the false claims it made to Plaintiff derive, in part, from its willful failure to apply each ongoing monthly payment to the month in which the payment was designated, as required by the Standing Order incorporated into the Confirmation Order. *See*, *supra*, ¶ 39.

142.   Instead of blindly relying on explicit or implicit misrepresentations from CAM as to the status and validity of the Account and the monthly assessment amounts with consideration of applicable bankruptcy laws, bankruptcy rules, and orders of the Bankruptcy Court, Amberlynn HOA should have investigated the

41

continuing status of the Account as managed by CAM, as well as CAM's accounting of Trustee Hustson's payments, through available, cost-effective measures.

143. Instead of blindly relying on explicit or implicit misrepresentations from Amberlynn HOA as to the status and validity of the Account and the monthly assessments with consideration of applicable bankruptcy laws, bankruptcy rules, and orders of the Bankruptcy Court, CAM should have investigated the information provided by Amberlynn HOA regarding the Account through available, cost-effective measures.

144. Instead of blindly relying on explicit or implicit misrepresentations from Amberlynn HOA and CAM as to the status and validity of the Account, particularly with consideration of applicable bankruptcy laws, bankruptcy rules, and orders of the Bankruptcy Court, BHS should have investigated the information provided by Amberlynn HOA and CAM regarding the Account through available, cost-effective measures.

145. Despite being informed by the Bankruptcy Court that the Account had been paid as contemplated by the Confirmation Order, Amberlynn HOA persisted in threatening to take Plaintiff's home, claiming she owed thousands of dollars more than she actually did and filing a Claim of Lien encumbering the Property.

42

146.    Despite being informed by the Bankruptcy Court that the Account had been paid as contemplated by the Confirmation Order, CAM persisted in threatening to take Plaintiff's home, claiming she owed thousands of dollars more than she actually did.

147.    Despite easily accessible public-record information being available to BHS showing that the Account had been paid as contemplated by the Confirmation Order, BHS persisted in attempting to collect a balance from Ms. Worsley and filing a Claim of Lien as to Plaintiff's property without engaging in due diligence or otherwise conducting an investigation as to the legal and factual basis of the balance allegedly owed or the Claim of Lien.

148.    Each Defendant's direct and indirect conduct caused Ms. Worsley to believe that her home of over thirteen years would be taken from her.

149.    Each Defendant's direct and indirect conduct exacerbated Ms. Worsley's diagnosed situational anxiety and depression.

150.    Each Defendant's direct and indirect conduct caused Ms. Worsley to resume taking medication to manage her diagnosed situational anxiety and depression. For some time, Ms. Worsley had been able to manage her diagnosis without medication until Defendants forced her to resume taking it.

43

151.    Each Defendant's direct and indirect conduct caused Ms. Worsley to miss work and, thus, have decreased income.

152.    Each Defendant's direct and indirect conduct caused Ms. Worsley to lose hope, as she had spent five years in a Chapter 13 bankruptcy, making the required payment every month. Yet, after she received her discharge, she was told that she still owed thousands more and that she needed to pay that additional money to protect her home from foreclosure.

153.    Each Defendant's direct and indirect conduct caused Ms. Worsley to suffer severe and overbearing emotional distress and anxiety.

154.    Each Defendant's direct and indirect conduct caused Ms. Worsley to be unable to focus on her life.

155.    Amberlynn HOA's actions and conduct described herein demonstrate its callous, conscious, and intentional disregard of, and indifference to, Plaintiff's rights.

156.    CAM's actions and conduct described herein demonstrate its callous, conscious, and intentional disregard of, and indifference to, Plaintiff's rights.

157.    BHS's actions and conduct described herein demonstrate its callous, conscious, and intentional disregard of, and indifference to, Plaintiff's rights.

158.    Plaintiff demands a jury trial over all claims.

## V.    <u>COUNT I - FAIR DEBT COLLECTION PRACTICES ACT</u>

159.    Plaintiff incorporates herein all previous allegations.

160.    Bagwell Holt Smith P.A.'s violations of the FDCPA include, but are not

limited to:

A.    Using any false, deceptive, or misleading representation or means in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e and e(10);

B.    Falsely representing the character, amount, or legal status of any debt, in violation of 15 U.S.C. § 1692e(2)(A);

C.    Falsely representing any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt, in violation of 15 U.S.C. § 1692e(2)(B).

D.    Representing or implying that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person when such action is not lawful, in violation of 15 U.S.C. § 1692d(4);

E.    Threatening to take any action that cannot legally be taken or that is not intended to be taken, in violation of 15 U.S.C. § 1692e(5);

F.    Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, in violation of 15 U.S.C. § 1692e(8);

45

G.      Using unfair or unconscionable means to collect or attempt to collect any debt, in violation of 15 U.S.C. § 1692f; and

H.      Collecting any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law, in violation 15 U.S.C. § 1692f(1).

WHEREFORE, Plaintiff Penny Worsley requests that judgment be entered in her favor and against Bagwell Holt Smith P.A. for:

1.      Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

2.      Statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2);

3.      Costs and attorney fees, pursuant to 15 U.S.C. § 1692k(a)(3); and

4.      Such other relief this Court may deem to be just and proper.

## VI.    COUNT II - NORTH CAROLINA DEBT COLLECTION ACT

161.    Plaintiff incorporates herein all previous allegations.

162.    Amberlynn Valley Homeowners Association, Inc.'s and Community Association Management, Limited's violations of the NCDCA include, but are not limited to:

A.      Attempting to collect any debt by means of any unfair threat, coercion, or attempt to coerce, in violation of N.C.Gen.Stat. § 75-51;

46

B.      Falsely accusing or threatening to accuse any person of fraud or any crime, or of any conduct that would tend to cause disgrace, contempt or ridicule, in violation of N.C.Gen.Stat. § 75-51(2);

C.      Making or threatening to make false accusations to any other person, including any credit reporting agency, that a consumer has not paid, or has willfully refused to pay a just debt, in violation of N.C.Gen.Stat. § 75-51(3);

D.      Falsely representing that nonpayment of an alleged debt may result in the seizure, garnishment, attachment, or sale of any property or wages unless such action is in fact contemplated by the debt collector and permitted by law, in violation of N.C.Gen.Stat. § 75-51(6);

E.      Threatening to take any action not permitted by law, in violation of N.C.Gen.Stat. § 75-51(8).

F.      Unreasonably publicizing information regarding a consumer's debt, in violation of N.C.Gen.Stat. § 75-53;

G.      Attempting to collect a debt by any fraudulent, deceptive, or misleading representation, in violation of N.C.Gen.Stat. § 75-54;

H.      Falsely representing the character, extent, or amount of a debt against a consumer, in violation of N.C.Gen.Stat. § 75-54(4); and

I.      False representing that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges, in violation of N.C.Gen.Stat. § 75-54(6).

47

WHEREFORE, Plaintiff Penny Worsley requests that judgment be entered in her favor and against Amberlynn Valley Homeowners Association, Inc. and Community Association Management, Limited for:

1.    Actual damages, pursuant to N.C.Gen.Stat. 75-56(b)(i) trebled pursuant to N.C.Gen.Stat. § 75-16;

2.    Civil penalties, pursuant to N.C.Gen.Stat. § 75-56(b)(ii);

3.    Costs and attorney fees, pursuant to N.C.Gen.Stat. § 75-16.1; and

4.    Such other relief this Court may deem to be just and proper.

## VII.   COUNT III - NORTH CAROLINA COLLECTION AGENCY ACT
### (plead alternatively as to Community Association Management, Inc.)

163.    Plaintiff incorporates herein all previous allegations.

164.    Community Association Management, Limited's violations of the NCCAA include, but are not limited to:

A.    Attempting to collect any debt by means of any unfair threat, coercion, or attempt to coerce, in violation of N.C.Gen.Stat. § 58-70-95;

B.    Falsely accusing or threatening to accuse any person of fraud or any crime, or of any conduct that would tend to cause disgrace, contempt or ridicule, in violation of N.C.Gen.Stat. § 58-70-95(2);

C.    Making or threatening to make false accusations to any other person, including any credit reporting agency, that a consumer

48

has not paid, or has willfully refused to pay a just debt, in violation of N.C.Gen.Stat. § 58-70-95(3);

D.    Falsely representing that nonpayment of an alleged debt may result in the seizure, garnishment, attachment, or sale of any property or wages unless such action is in fact contemplated by the debt collector and permitted by law, in violation of N.C.Gen.Stat. § 58-70-95(6);

E.    Threatening to take any action not permitted by law, in violation of N.C.Gen.Stat. § 58-70-95(8).

F.    Unreasonably publicizing information regarding a consumer's debt, in violation of N.C.Gen.Stat. § 58-70-105;

G.    Attempting to collect a debt by any fraudulent, deceptive, or misleading representation, in violation of N.C.Gen.Stat. § 58-70-110;

H.    Falsely representing the character, extent, or amount of a debt against a consumer, in violation of N.C.Gen.Stat. § 58-70-110(4); and

I.    False representing that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges, in violation of N.C.Gen.Stat. § 58-70-110(6).

WHEREFORE, alternatively, Plaintiff Penny Worsley requests that judgment be entered in her favor and against Community Association Management, Limited for:

1.    Actual damages, pursuant to N.C.Gen.Stat. § 58-70-130(a);

49

2.    Civil penalties, pursuant to N.C.Gen.Stat. § 58-70-130(b));

3.    Costs and attorney fees, pursuant to N.C.Gen.Stat. § 75-16.1; and

4.    Such other relief this Court may deem to be just and proper.


March 13, 2020

                              LAW OFFICES OF JOHN T. ORCUTT, P.C.

                              /s/ Craig M. Shapiro
                              Craig M. Shapiro
                              1738 Hillandale Road, Suite D
                              Durham, North Carolina 27705
                              Telephone: (919) 286-1695
                              Fax: (919) 286-2704
                              Email: cshapiro@johnorcutt.com
                              State Bar No. 48887

                              ATTORNEY FOR PLAINTIFF